IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ERVIN MANGRUM,

      Plaintiff,

v.                                                                          No. 05-2979-B

FASIL KEBEDE, EDWARD SAYEGH,
BERUK PROPERTIES, INC., ARGENT
MORTGAGE COMPANY, LONG
BEACH MORTGAGE COMPANY,
CARTERET MORTGAGE COMPANY,
LLC, JUTE.K LLC, AND CARLTON
ORANGE D/B/A THE ORANGE LAW
FIRM,

      Defendants.
_____

ORDER GRANTING DEFENDANT ARGENT MORTGAGE
CO.'S MOTION TO DISMSS
_____

The Plaintiff, Ervin Mangrum ("Mangrum"), brought the instant action against the

Defendants, alleging that they engaged in a concerted series of action in violation of the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.  Before the Court

is the motion of one of the Defendants, Argent Mortgage Co. ("Argent"), to dismiss Mangrum's

Complaint for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below,

the motion of Argent is GRANTED.

FACTS

The Plaintiff has alleged the following in his complaint.  On various dates between July

18, 2003, and June 21, 2004, Defendant Beruk Properties, Inc. ("Beruk"), which is controlled

by Defendants Fasil Kebede ("Kebede") and Edward Sayegh ("Sayegh"), sold Mangrum[1] a total of fourteen properties for the sum of $776,000. (Compl. ¶ 14). The properties, all located in Shelby County, Tennessee, had been acquired by Beruk between April 26, 2000, and March 11, 2003, for the sum of $128,000. (Id. ¶ ¶ 14, 17).

Defendant Carlton Orange d/b/a the Orange Law Firm ("Orange") was the "closing attorney" for all of the transactions between Beruk and the Plaintiff. (Id. ¶ 22). Defendant Carteret Mortgage Co. ("Carteret") was the loan originator, receiving a fee as a result of each transaction. (Id. ¶ 16). Defendant Long Beach Mortgage Co. ("Long Beach") provided the financing for eight properties, while Argent provided the financing for five properties. (Id. ¶ ¶ 19-20).

All of the properties were substandard, with actual values far below the sale price.[2] (Id. ¶ 24). Prior to the closing, Kebede and Sayegh misrepresented to Mangrum that the properties were "income producing." (Id. ¶ 25). Kebede and Sayegh explained to Plaintiff that they would manage the properties for him and that at an indeterminate date, they would repurchase the properties at a higher price. (Id. ¶ 27).

Kebede and Sayegh also convinced Mangrum to loan them a sum of $641,496 over a period of approximately two years between 2002 and 2004 in order to fund real estate projects in Memphis. (Id. ¶ 30).

---

[1]The Plaintiff, a sixty-five-year-old retiree in ill health, is a former employee of Northwest Airlines where he worked as a manual laborer. (Compl. ¶ 15). Mangrum has only a limited education. (Id.).

[2]Mangrum also contends that the "appraisals obtained on said properties were inaccurate, fraudulent, or non-existent. These facts were known to each of the Defendants either directly or through their agents or underwriting departments." (Compl. ¶ 24).

The Plaintiff contends that this pattern of activity by all Defendants violated title 18 section 1962(a) of the United States Code. That section provides,

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from <u>a pattern of racketeering activity</u> or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.[3]

18 U.S.C. § 1962(a) (emphasis added). Mangrum filed an Amended Complaint in which he also alleges a violation of subsection (c) of section 1962. This subsection provides,

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through <u>a pattern of racketeering activity</u> or collection of unlawful debt.

<u>Id.</u> § 1962(c) (emphasis added). The Plaintiff's Amended Complaint also includes state law claims for (1) breach of contract, (2) fraudulent inducement, (3) fraud, and (4) unjust enrichment.

## STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the

---

[3]The Court notes that the Plaintiff's Amended Complaint does not allege that the Defendants engaged in the collection of an unlawful debt.

3

claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

<u>ANALYSIS</u>

I.    RICO CLAIMS

    Argent contends that the Plaintiff has failed to state a claim against it because the Complaint does not demonstrate that Argent invested income produced by a pattern of racketeering as defined by RICO. See 18 U.S.C. § 1962(a) (requiring a plaintiff to show a defendant received income from racketeering activity and invested it in an enterprise engaged in interstate commerce). Specifically, Argent argues, inter alia, that Mangrum's claim must fail against it because its total involvement lasted only a few days. In response, the Plaintiff disagrees, but he does not address Argent's argument with respect to the brief period of Argent's involvement.

    In order to state a claim under RICO, a plaintiff must allege "a pattern of racketeering activity." See 18 U.S.C. § 1962(a), (b), (c); H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237, 109 S. Ct. 2893, 2899 (1989). This requirement cannot be met unless the plaintiff sets forth at least two predicate acts attributable to the enterprise occurring within a ten-year period. See 18 U.S.C. § 1961(5); H.J., Inc., 492 U.S. at 237, 109 S. Ct. at 2899; Vild v. Visconsi, 956 F.2d 560, 565 (6th Cir. 1992).

    In H.J., Inc., the United States Supreme Court held that the two predicate acts were merely

4

a prerequisite to establishing a RICO claim and that a plaintiff would also need to demonstrate "a 'relationship between the predicates' and the 'threat of continuing activity.'" Vild, 956 F.2d at 566 (quoting H.J. Inc., 492 U.S. at 239,109 S. Ct. at 2900). Although relationship and continuity combine to create a pattern of racketeering activity, each constitutes a distinct prong of the pattern requirement. Id.

Concerning the second aspect of the pattern requirement, the Court in H.J., Inc. explained that continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 492 U.S. at 242, 109 S. Ct. at 2902. In reviewing his Complaint, this Court concludes that no set of facts alleged by Mangrum can be construed as satisfying the future threat of repetition requirement.[4] The Plaintiff has not averred that the Defendants have previously conspired to defraud anyone else; nor has he indicated that they will do so in the future.[5] Mangrum's aggrievement is

---

[4]In H.J., Inc., the Court gave the following example of what would constitute a "threat of continuing activity":

> Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity.

492 U.S. at 242, 109 S. Ct. at 2902.

[5]The Court further explained in H.J., Inc. that

> [i]n other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity

based solely upon his allegations that the Defendants conspired together to defraud <u>him</u> of over one million dollars.  Therefore, the Court will address whether the Plaintiff has satisfied the continuity requirement by analyzing whether he has alleged a sufficient "closed period of repeated conduct." <u>Id.</u>

A plaintiff can satisfy the closed-period continuity burden "by showing a series of past related predicates occurring over an extended period of time. [However,] [a] few months period usually is not sufficient." <u>Vild</u>, 956 F.2d at 569.  "Although there are no rigid rules regarding what amounts to 'a substantial period of time,' racketeering activity lasting only 'a few weeks or months and threatening no future criminal conduct' is insufficient." <u>Moon v. Harrison Piping Supply</u>, 2006 WL 2772763, *4 (6th Cir. Sept. 28, 2006) (quoting <u>H.J., Inc.</u>, 492 U.S. at 242, 109 S. Ct. at 2902).


Although it has not established a bright-line test, the Sixth Circuit in <u>Vemco, Inc. v. Camardella</u> held that seventeen months did not satisfy the closed period analysis.  23 F.3d 129, 134 (6th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1017 (1994); <u>see also</u> <u>id.</u> at 134-35 ("There are no facts pleaded suggesting anything but that once Flakt received the money it was requesting in the billing statements, its scheme would be over, and it would end its association with Vemco.").  Likewise,

_____

is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.  Such associations include, but extend well beyond, those traditionally grouped under the phrase "organized crime."  The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."

492 U.S. at 242, 109 S. Ct. at 2902.

the appellate court has held that neither six or seven months nor two and one-half years of racketeering activity would be adequate to satisfy the closed-ended formulation of continuity. Compare Vild, 956 F.2d at 569, with Moon, 2006 WL 2772763, at *5.

In Thompson v. Paasche, the defendant seller of land had reserved oil and gas rights, telling the plaintiff buyers that he was doing so only to ensure the land remained unspoiled.  950 F.2d 306, 309 (6th Cir. 1991).  However, the plaintiffs alleged that the defendant had arranged to sell the oil and gas rights to a third party for the purpose of drilling.  Id. at 309-10.  Nevertheless, the court reversed the plaintiffs' RICO verdict, concluding that the scheme was "insufficiently protracted to qualify as a RICO violation" because it ended once the defendant sold the plaintiffs all of the lots. Id. at 311; cf. Edmondson & Gallagher v. Alban Towers Tenants Assoc., 48 F.3d 1260, 1265 (D.C. Cir. 1995) (stating that a "combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim").

Based upon the foregoing authorities, the Court finds that the eleven month period of time involving the sale of property from Beruk to Mangrum is "insufficiently protracted to qualify as a RICO violation."[6]  Thompson, 950 F.2d at 311.  Because the Complaint does not allege that Argent's involvement exceeded the eleven month period, Argent's motion to dismiss for failure to state a RICO claim is GRANTED.

## II.   STATE LAW CLAIMS

Having disposed of the Plaintiff's claims under federal law, the Court now turns to Mangrum's state law claims against Argent.  The exercise by a district court of supplemental, or

---

[6]The Court notes that the Plaintiff's Complaint alleges other fraudulent acts by Kebede and Sayegh in acquiring loans from Mangrum which took place over a longer period.  However, the Plaintiff does not contend that Argent had any involvement in those acts.

pendent, jurisdiction over state law claims is governed by title 28 section 1367 of the United States Code, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c)(3).  Absent any remaining federal claims against Argent, the Court, in its sound discretion, hereby dismisses without prejudice the Plaintiff's claims against this Defendant under state law.  <u>See</u> <u>Weeks v. Portage County Executive Offices</u>, 235 F.3d 275, 279-80 (6th Cir. 2000) (stating that a district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

CONCLUSION

For the foregoing reasons, the Court GRANTS the motion of Argent to dismiss the Complaint for failure to state a claim as to the RICO allegations.  Furthermore, in the Court's discretion, the Plaintiff's remaining state law claims against this Defendant are DISMISSED without prejudice.

IT IS SO ORDERED this 2nd day of November, 2006.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE